# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CHRISTOPHER COLLINGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-08000-MDH |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Petitioner Christopher Collings's Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254. For the reasons explained below, Petitioner's Petition is **DENIED**.

### Factual Background

Petitioner was convicted of first degree murder in the Circuit Court of Phelps County,

Missouri. The jury recommended a sentence of death and the court imposed the death sentence

on May 11, 2012. The facts as summarized by the Missouri Supreme Court are:

> Nine-year-old Rowan Ford (hereinafter, "Rowan") lived with her mother, Colleen
> Munson (hereinafter "Colleen"), and her stepfather, David Spears (hereinafter,
> "Spears") in Stella, Missouri, located in Newton County. Spears had been friends
> with Collings for many years. Collings lived with Spears' family for several months
> during the summer and fall of 2007. Collings slept in the basement, and Rowan
> referred to him as "Uncle Chris." Collings moved to his family's farm in late
> October 2007 and lived in a travel trailer on the property, located in Wheaton,
> Missouri, in Barry County.

> On the evening of Friday, November 2, 2007, Nathan Mahurin (hereinafter,
> "Mahurin"), a mutual friend of Collings and Spears, met them at a farm where they
> were working. They went to a liquor store to buy two or three six packs of malt
> liquor and then went to Spears' home to play pool and drink. At 8:30 p.m., Colleen
> left for work and left Rowan in Spears' care. The men continued to drink after
> purchasing more alcohol.

> Later that evening, Collings asked Mahurin to drive him home. Mahurin and
> Collings talked Spears into going with them and leaving Rowan home alone, asleep
> on the floor in her bedroom. On the way to Collings' trailer, the men stopped to buy

1

more alcohol. At Collings' trailer, they continued to drink and smoked marijuana. After an hour, Mahurin and Spears left to go home. Mahurin decided to take the back roads instead of the direct highway route to Spears' house because he was intoxicated and he did not want to get stopped by the police. Mahurin dropped off Spears and returned home by midnight.

On November 3rd, Colleen returned home from her overnight work shift at 9:00 a.m. and could not find Rowan. After searching the house, Colleen woke Spears and asked him where Rowan was. Spears told Colleen that Rowan was staying with a friend, but he could not identify the friend. Colleen walked the neighborhood searching for Rowan to no avail. Colleen wanted Spears to call the police, but he insisted Rowan was at a friend's house. When Rowan did not return that afternoon, Colleen contacted the Newton County sheriff's department to report Rowan missing, at which time a large scale search was launched to find her. Spears, Mahurin, and Collings were all considered "persons of interest" because they were the last people to see Rowan at the house.

On November 4th, Newton County deputies spoke with Collings on the parking lot of a local restaurant about Rowan's disappearance. Collings gave the deputies the same account Mahurin did about their activities that evening, but omitted that they had smoked marijuana. Collings told the deputies he stayed home and went to sleep after Mahurin and Spears left. Collings denied speaking to Spears since he left and claimed he was unaware Rowan was missing until the police spoke to him. The deputies described Collings as cooperative, concerned, and polite. Later that evening, Collings visited Colleen at her home, asked how the search was going, and offered to help find Rowan.

On November 5th, the FBI became involved in the investigation. While Newton County deputies continued to interview Spears, FBI technicians seized and searched Spears' pickup truck and a vehicle Spears' mother said she loaned Spears after Mahurin dropped him off on the night Rowan disappeared. In the meantime, Newton County deputies approached Collings at work and requested he answer more questions. Collings agreed and drove himself to the sheriff's department. Collings gave a similar statement to the one he had given the day before. Collings was read his Miranda rights after being questioned about Spears' potential involvement in Rowan's disappearance. Collings indicated that he understood his rights and waived them. Collings also agreed to submit to a polygraph test and a Computer Voice Stress Analysis (CVSA) test. Collings was read his rights again prior to testing and waived them. After the testing was completed, Collings spoke to the deputies. Collings insisted he knew nothing about Rowan's disappearance and offered to help in the search.

Later that afternoon, Wheaton Chief of Police Clinton Clark (hereinafter, "Chief Clark") was on routine patrol in Wheaton. Collings and Chief Clark had a relationship spanning seventeen years. Chief Clark had known Collings since he was a young boy, he was close friends with Collings' adoptive mother, and he knew

Collings' adoptive father. Collings trusted Chief Clark and turned to him for advice, sought solace from him when Collings' mother died, and made a point to visit Chief Clark when he came to visit when he lived out of town.

Collings flagged down Chief Clark, told him that Rowan was missing, and he was trying to find her. Chief Clark described Collings as "kind of excited" and "not his normal self." Chief Clark encouraged Collings to continue to do what he could to help find Rowan. After speaking to Collings, Chief Clark notified the FBI that Collings contacted him about Rowan's disappearance. Chief Clark told the FBI that he and Collings had a long-standing relationship and a good rapport. Chief Clark believed Collings knew something about Rowan's disappearance and offered his help in the investigation. Chief Clark was encouraged by the FBI and Newton County deputies to continue to talk with Collings.

That evening, Collings went to Colleen's home to speak to her about the investigation. The FBI spoke to Colleen and Collings individually at Colleen's home. Collings was described as cooperative, and he gave the same account of the evening's activities as he had given previously. Collings spoke about his relationship with Spears, told the FBI he believed Spears was involved in Rowan's disappearance, and offered to wear a wire to help the investigation. Collings also suggested locations in which to search for Rowan.

On November 6th, law enforcement officials continued to search for Rowan, but the focus of the investigation was on Spears. Spears was interviewed repeatedly, his home was searched, and he was driven around the area in an effort to find Rowan. In the late afternoon or early evening, Collings went to Chief Clark's office to let him know he had spoken to the FBI and was active in the search to find Rowan, even suggesting places for them to search. Chief Clark believed Collings "had something on his mind" and appeared "apprehensive." Collings would not make eye contact with Chief Clark, which was unusual. Chief Clark told Collings that he knew how to contact him if he needed help with anything. After this conversation, Chief Clark contacted the FBI and told them about his talk with Collings. The FBI believed if Collings were going to confess or reveal any information, it would be to Chief Clark. Hence, the FBI encouraged Chief Clark to help in the investigation, to which Chief Clark agreed.

On November 7th, Collings met with the FBI at the Newton County sheriff's department. Collings consented to provide a buccal swab for DNA testing. Collings executed consent forms to search a safe he owned located at Spears' home, his property, and trailer. Collings submitted to additional testing, which required a voluntary waiver of his rights. Afterwards, Collings was interviewed, but not Mirandized. Collings spoke with the FBI about an alibi Spears presented for the night Rowan disappeared, which Collings said was untrue. As the interview progressed, Collings became more emotional, tense, and nervous when asked about Rowan. Collings told the agents that if they were going to accuse him of being

involved with Rowan's disappearance, he was not going to talk to them anymore. This concluded the interview.

In the evening, Collings went to Chief Clark's office and was very upset about his FBI interview that day. Collings told Chief Clark he was going to "dummy up about anything else ...," and maybe he needed to get a lawyer. Chief Clark told Collings that was his right, but he also encouraged Collings to continue to do anything he could to help find Rowan and stated it was not in his best interest to stop cooperating. Collings told Chief Clark, "[I]f I have anything else to say, I'll talk to you." Chief Clark then advised Collings of his Miranda rights. Collings agreed to speak and signed a waiver form. Chief Clark told Collings he felt there was something on his mind and asked if he knew anything about Rowan's disappearance. Collings began to cry and stated he always loved Rowan and would not have done anything to hurt her. At this point, someone came into the police department, interrupting their conversation, which caused Collings to leave abruptly.

Chief Clark contacted the FBI after his discussion with Collings. Chief Clark informed them he believed Collings was "near a breaking point" and suggested Collings needed a day off from questioning. Chief Clark further advised Collings was "about to lawyer [up]" and he tried to dissuade him from doing that and encouraged him to continue to cooperate.

On November 8th, Collings had no contact with law enforcement. Chief Clark spoke with the FBI about Collings, the dynamics of his family, and Chief Clark's unique relationship with him. Chief Clark thought Collings knew something about Rowan's disappearance but believed they needed to find her body first. The FBI told Chief Clark once they found Rowan's body, they wanted him to be the one to speak to Collings.

On November 9th, Rowan's body was discovered at the bottom of a sinkhole known as Fox Cave. The sinkhole was twenty to thirty feet from the road in a heavily wooded area. Rowan was nude from the waist down, except for one sock. She had a ligature mark around her neck and trauma, blood, and tissue damage to her vaginal area. She was covered with leaves and debris.

Chief Clark heard about Rowan's body being found on the news that morning. He received a page from his office that Collings came by asking for him and inquired about what time he came on duty because Collings needed to speak to him. Chief Clark was contacted by the FBI, who directed him to find Collings and tell him that they found Rowan's body.

Chief Clark went looking for Collings, but to no avail. Collings called Chief Clark on his cellular telephone and asked if law enforcement officers were following him in a gray minivan. Chief Clark denied knowing about any surveillance being conducted. Collings relayed how he had been driving "all over the area ... trying

4

shake it" and that he was nervous and felt threatened. Chief Clark advised Collings to go to the police department, but Collings suggested they meet up.

After they met, Collings told Chief Clark they needed to talk and agreed to ride back to the police department in Chief Clark's patrol car. They discussed the gray minivan, and Collings indicated he was worried that people might take matters into their own hands now that Rowan's body had been recovered. Chief Clark told Collings he could not protect him twenty-four hours a day and could not guarantee his safety.

When they arrived at the police department, Chief Clark read Collings his Miranda rights. Collings indicated he understood his rights and agreed to talk. Chief Clark told Collings, "[W]ell, son, it's over.... We found Rowan's body this morning." Collings dropped his head and his eyes began to water. Chief Clark believed Spears "had done something" to Rowan and suspected Collings had knowledge of what Spears did. Chief Clark told Collings he needed to tell him what Spears did to Rowan, to which Collings reacted with surprise and looked at Chief Clark "kind of funny." The police department was busy and Collings indicated he did not want to talk with so many people nearby. Chief Clark recommended they go somewhere quiet to talk. Collings suggested they go to the Muncie Bridge, located a few miles outside of Wheaton.

Chief Clark contacted law enforcement officials to inform them he and Collings were headed to the Muncie Bridge. After they arrived, Collings held his hands out, indicating Chief Clark ought to handcuff him. Chief Clark stated that was not necessary, to which Collings replied, "[F]or what I am about to tell you, you will." Collings and Chief Clark sat on a slope near the bridge, and Collings told him what occurred the evening Rowan disappeared.

Collings relayed the same story he maintained all week about his activities up until the time Mahurin and Spears left his trailer. Collings confirmed that Mahurin and Spears took the back roads home to avoid being detected because they wanted to finish drinking and smoking marijuana. Collings told Chief Clark he knew if he hurried, he could get back over to Spears' house and get Rowan "out of there" before the other men returned. Collings took the highway, which was the "quickest route" back to Spears' house. Once back at Spears' house, Collings went in, used the bathroom, and retrieved Rowan off of the floor in her bedroom. Collings carried Rowan, who was still sleeping, outside and put her inside his pickup truck. Rowan remained asleep during the drive back to Collings' trailer. Collings carried Rowan inside, placed her on the bed, and removed her pajama pants and underwear. Collings did not speak to Rowan so she would not recognize his voice and kept the lights off so that she would not see him. Collings then said, "I had sex with her" in the "missionary position" and also "used my finger a little bit." Rowan woke up when Collings penetrated her, struggled at first, and then stopped. Intercourse lasted a few minutes, and Collings could not remember if he ejaculated.

Afterward, Collings told Chief Clark he intended to return Rowan to her house. Collings said he took Rowan outside; he held her in front of him by her arms and facing away from him so she would not see his face. Rowan looked back over her shoulder and could see Collings in the moonlight. Collings knew Rowan recognized him and "freaked out." In an old pickup truck sitting on the property, Collings saw a coil of "chicken house rope" and looped it around Rowan's neck. Collings remained behind Rowan and pulled the rope tight around her neck with his fists clenched, pulling his arms away from each other. Rowan struggled, but Collings said he "kept it tight" even after Rowan stopped struggling and fell to the ground. Eventually, Rowan stopped moving.

Collings realized he "was in a lot of trouble" and put Rowan's body in the bed of his pickup truck. Collings planned to dispose of Rowan's body off of the Muncie Bridge, but rejected that idea because he thought her body would be discovered too quickly. As Collings drove around considering his options, he decided to go to Fox Cave. Collings told Chief Clark he threw Rowan's body into the sinkhole and tried to pull some branches and limbs over to cover the entrance to the sinkhole, but it was too big and the debris fell inside.

Collings got back into his pickup truck and returned to his trailer. At the trailer, Collings discovered blood on his mattress and his clothes, which he did not remove when he had sex with Rowan. Collings said he knew he needed to get rid of these items, in addition to Rowan's pajama pants, her underwear, and the rope he used to strangle her. Collings put everything except the mattress into a wood stove and burned it. Collings rolled up the mattress and put it into a fifty-five gallon drum used as a burn barrel with some old carpet. Collings said, "I got to thinking, now that's gonna make a hell of a fire. Somebody's gonna see that burning." Collings then dragged the barrel into a barn and set the contents on fire to avoid detection.

When Collings finished talking, he and Chief Clark returned to the Wheaton police department because Chief Clark wanted the other law enforcement officials involved in the investigation to hear Collings' story. During the ride back to the police department, Collings rode in the front seat, smoked a cigarette, and was not handcuffed. Collings was advised of his rights, and deputies from Barry and Newton County, along with the FBI, listened as Collings repeated his confession. Collings executed a consent form to allow a search of his property during this interview. This interview was not recorded.

Afterward, Collings was transported to the Barry County sheriff's department, where he gave a videotaped statement after being advised of his rights. Collings said on the videotape he had been advised of his rights "several times" throughout the week. Collings repeated the same series of events during the first videotaped statement. Collings felt guilty and remorseful and said he had been "bawling like a baby all afternoon."

6

Collings' confession was surprising to the investigators because they were operating under the assumption that Spears killed Rowan and Collings merely had knowledge of the event. As a result, Newton County deputies questioned Spears again, at which time Spears implicated himself. Upon learning this, Collings was questioned again at Barry County in a recorded interview. The deputies and Chief Clark told Collings that Spears stated he called his mother, had her bring a vehicle to his home, and then he joined Collings back at his trailer. Spears stated he also had sex with Rowan, was there when Collings killed her, and helped Collings dispose of her body. Collings vehemently and repeatedly denied Spears had any involvement in Rowan's rape, murder, and disposal of her body.

Collings' trailer and adjacent properties were searched while Collings gave the second videotaped statement. Among the items collected were: a rusted metal spool inside the bed of an old pickup truck; a piece of string or twine found on the driver's side floor of the old pickup truck; rope or wire found inside Collings' pickup truck; a fifty-five gallon drum with burned remnants inside; a burn pile that contained an item appearing to be a cord; ashes collected from a woodstove; and a light-to-medium brown hair, found in the bed of Collings' pickup truck.

The autopsy revealed Rowan died from ligature strangulation. Rowan was conscious for approximately ten seconds, quit breathing after approximately two to three minutes, and would have been brain dead in approximately twelve minutes. Rowan's body had signs of decomposition. The body had additional small scrapes, bruises, and injuries inflicted prior to death and significant facial trauma likely inflicted after her death as a result of being thrown into the sinkhole. The body also had a laceration approximately 3/4 of an inch long from her vagina to her anus. This laceration was consistent with blunt force trauma inflicted by a penis, which caused significant bleeding and would have been very painful. During the autopsy, a rape kit was collected, including vaginal swabs, blood samples, and two foreign hairs from Rowan's pubic area.

Collings was charged with one count of first degree murder, one count of forcible rape, and one count of statutory rape. The murder charge was severed from the rape charges, which later were dismissed. Venue was changed to Phelps County, and a jury was selected from Platte County.

Collings filed a motion to suppress, seeking to exclude evidence of all statements taken from him by law enforcement agents throughout the entire investigation and all evidence obtained from the searches of his body, pickup truck, trailer, and property. The circuit court overruled Collings' motion, finding Collings was not in custody for any of the interviews until November 9th, after he returned to the Wheaton police department with Chief Clark and met with other law enforcement officers to give a statement.

At the conclusion of the guilt phase, the jury found Collings guilty of murdering Rowan. During the penalty phase, the State presented victim impact testimony from

six witnesses. Collings presented two witnesses who offered testimony about Spears' potential involvement in Rowan's murder. Collings' family members testified describing Collings' tumultuous upbringing, his shuffling back and forth between his biological and adoptive parents who had significant substance abuse and legal issues, and the issues he encountered as a teenager and young adult. Collings also presented testimony from an expert in the field of human development that explained Collings was handicapped developmentally due to severe emotional neglect during the first six months of his life and beyond. As a result, the expert testified Collings suffered confusion in his connections with other people that resulted in a diagnosis of "severe disorganized disassociative attachment disorder" and "intermittent explosive personality disorders."

After the penalty phase, the jury recommended a sentence of death. The jury found Rowan's murder involved torture, and, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhumane. The jury also determined Rowan was a potential witness in a pending investigation of her rape and was killed as a result of her status as a potential witness.

*State v. Collings*, 450 S.W.3d 741, 747–53 (Mo. 2014).

## Procedural Background

On August 19, 2014, Petitioner's first-degree murder conviction and death sentence were affirmed on direct appeal by the Missouri Supreme Court. *Id.* Certiorari was denied on February 25, 2015. *Collings v. Missouri*, No. 14-7051 (Mem), 135 S. Ct. 1401 (2015). Following an evidentiary hearing, the post-conviction review court denied Petitioner's motion for post-conviction relief. The Missouri Supreme Court affirmed the denial of post-conviction relief on March 6, 2018. *Collings v. State*, 543 S.W.3d 1 (Mo. 2018). Petitioner's motion for rehearing was denied on April 17, 2018.

## Legal Standard

### A. Antiterrorism and Effective Death Penalty Act

"The Antiterrorism and Effective Death Penalty Act of 1996 [("AEDPA")] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

8

under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed. 2d 914 (2002), citing *Williams v. Taylor*, 529 U.S. 362, 403-404, 102 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The Supreme Court has stated that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)(internal citation omitted).

Pursuant to 28 U.S.C. § 2254(d), a writ of habeas corpus shall only be issued on behalf of a person in custody pursuant to the judgment of a State court with respect to any claim adjudicated on the merits in State court, if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 97-98.

"Under § 2254(d)(1), a state court decision is 'contrary to' clearly  established federal law when the state court (1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law; or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *White v. Dingle*, 757 F.3d 750, 754 (8th Cir. 2014) (internal citation and quotation omitted). "A decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

9

case." *Id*. "[T]he Supreme Court has repeatedly stressed that an unreasonable application is different from an incorrect one." *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003) (internal citations omitted). The Eighth Circuit has stated "we may not grant a writ of habeas corpus unless the relevant state court decision is both wrong and unreasonable." *Id.*

28 U.S.C. § 2254(e)(1) states: "In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1). *Brumfield v. Cain*, 576 U.S. 305, 322, 135 S. Ct. 2269, 2282, 192 L. Ed. 2d 356 (2015). The Supreme Court has stated, however, that in the context of § 2254(d)(2), the term "unreasonable" is difficult to define." *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). The Supreme Court has held "that a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.*

**B. Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim has two components: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be

10

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* A court must presume that a challenged action was sound trial strategy, and the defendant is required to overcome such presumption. *Id*.

With respect to the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a death sentence . . ., the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id*. at 695. A defendant must establish both prongs of the *Stickland* test by a preponderance of the evidence to prove ineffective assistance of counsel. *Tisius v. State,* 519 S.W.3d 413, 420 (Mo. 2017).

### C. Procedural Default

"A claim is procedurally defaulted if a habeas petitioner failed to raise it in state proceedings." *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009) (citation omitted). In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the Supreme Court held, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." "Negligence on the part of a prisoner's postconviction attorney does not qualify as

11

'cause.'" *Maples v. Thomas*, 565 U.S. 266, 280, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (internal citation omitted).

Petitioner admits that several of the grounds for relief he raises were procedurally defaulted. Petitioner argues, however, that the narrow exception announced by the Supreme Court in *Martinez v. Ryan* applies allowing this Court to review his otherwise procedurally defaulted claims.[1] In *Martinez*, the Supreme Court recognized a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *Martinez v. Ryan,* 566 U.S. 1, 17, 132 S. Ct. 1309, 1320, 182 L. Ed. 2d 272 (2012).

To overcome procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim has some merit." *Id.* at 13. As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687.

The Eighth Circuit has stated that the standard of prejudice is higher than that required to establish ineffective assistance of counsel under *Strickland*. *Charron v. Gammon*, 69 F.3d 851, 858 (8th Cir.1995) ("To demonstrate prejudice, a petitioner must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions."). The Eighth Circuit has further stated, in analyzing the "narrow question of postconviction counsel's performance, as *Martinez* instructs us to do, we must determine whether the ineffective-assistance-of-trial-counsel claim was 'substantial enough' that

---

[1] Petitioner filed a Motion for Stay and Abeyance of Habeas Corpus Proceedings pending Exhaustion of State Remedies. (Doc. 44). The Court has denied this motion in a separate Order.

12

the failure to raise it on postconviction review was itself ineffective." *Deck v. Jennings*, 978 F.3d 578, 582–83 (8th Cir. 2020), *cert. denied sub nom. Deck v. Blair*, 211 L. Ed. 2d 76, 142 S. Ct. 186 (2021) (internal citation omitted). The Eighth Circuit held that failing to make an argument that would "require the resolution of unsettled legal questions" is generally not "outside the wide range of professionally competent assistance." *Id.* Further, an attorney's decision to not raise a claim ... is not deficient performance unless that claim was plainly stronger than those actually presented. *Id.*

In *Shinn v. Ramirez*, the United States Supreme Court reaffirmed the principle that claims that are not raised in accordance with state court rules are procedurally barred as opposed to unexhausted. *Shinn v. Ramirez,* 212 L. Ed. 2d 713, 142 S. Ct. 1718, 1728 (2022). The Court held that if the state courts would dismiss a claim for failure to follow procedural rules then the claim is exhausted through default. *Id.* at 1732.

## Discussion

Petitioner raises 28 claims for relief which are discussed herein:

**Ground 1: The trial court failed to suppress Petitioner's statements to law enforcement.**

Petitioner argues his statements to law enforcement on November 9, 2007 were used to collect "most of the evidence used at trial" to link him to the murder and that without the statement the State would not have had sufficient evidence to convict him. Petitioner argues the statements were the product of unconstitutional police tactics and denied him his Fifth and Fourteenth Amendment rights.

Petitioner appealed the trial court's ruling on the motion to suppress raising the same arguments presented here, including: that law enforcement officers exploited the close relationship Petitioner had with Chief Clark; that law enforcement officers engaged in an unlawful two step

13

interrogation; that law enforcement exploited a fear of vigilante justice to induce his confession; and that law enforcement failed to give required *Miranda* warnings. The Missouri Supreme Court rejected all of Petitioner's arguments and found there was no violation of the *Spano* "false friend" prohibition; there was no violation of the *Seibert* "two step interrogation;" Petitioner was given *Miranda* warnings; and Petitioner's confession was not coerced by exploitation of threats of vigilante justice. *State v. Collings*, 450 S.W.3d at 753-56 (Mo. 2014). The Missouri Supreme Court also addressed other attacks on the confessions raised by Petitioner and found the confessions were admissible and affirmed the denial of the motion to suppress.

In addition, the Missouri Supreme Court addressed the totality of the circumstances regarding Petitioner's confession and motion to suppress and reiterated that on the videotaped interview Petitioner repeatedly asserted that he understood his rights, that he had heard his rights several times throughout the week, that he was not threatened, that no promises were made to him, and that he signed the *Miranda* waiver of his own free will. *Id.* at 756.

Here, the decision of the Missouri Supreme Court is entitled to deference as Petitioner has not established an unreasonable determination of the facts in light of the evidence presented in the State court proceeding or a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The Court denies Ground One.

> **Ground Two: Petitioner was denied his right to due process of law when the State court refused to admit and consider substantial evidence of police misconduct.**

Petitioner alleges the trial court made erroneous evidentiary rulings during the suppression hearing and that this violated his right to due process of law. To the extent Petitioner again challenges the state law evidentiary rulings those claims are not properly before the Court and are denied. However, with regard to an alleged due process violation arising from the state court

evidentiary ruling, Petitioner must establish that there was evidentiary impropriety and that the impropriety was so egregious that "absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers,* 475 F.3d 965, 972 (8th Cir. 2007). This Court does not re-examine the state court's interpretation and application of the state's evidentiary rules and laws. *Id.* at 974.

The Missouri Supreme Court also rejected this claim based on a plain error review procedurally barring the claim from review by this Court. *Collings,* 450 S.W.3d at 756.

The Supreme Court's decision states:

Collings was arrested on November 9th, appointed counsel, and arraigned on November 13, 2007. Chief Clark was present at the arraignment and heard defense counsel advise Collings to not speak to anyone about his case. On November 14th, Collings asked to speak to Chief Clark about a personal legal matter unrelated to the murder case. When Chief Clark arrived, he *Mirandized* Collings prior to engaging in conversation. Chief Clark told Collings he was instructed not to discuss anything with him until Collings answered additional questions about Rowan's murder and explained the inconsistencies between his statement and Spears' statement. Chief Clark told Collings, "I have some questions in my mind that I really wish that you would help me with, if you will." Collings responded, "Well, it depends. If it's about my case, I can't—I was advised by my lawyer not to talk to anybody as far as my case."

Instead of terminating the discussion at this point, the conversation continued for approximately forty minutes. Chief Clark repeatedly asked Collings to "clear up details," "explain discrepancies," "put things at ease," and urged Collings to "get this over with and get it behind [him]" regarding the questions Chief Clark felt were still unresolved about the case. Chief Clark repeatedly explained to Collings that he was "not going to pressure or force," "attempt to coerce," and would "never dream of pressuring or coercing" Collings into answering any questions. Collings stated unequivocally, at least nine times, that he could not answer any questions regarding the case on the advice of counsel. Each time Collings invoked his rights, Chief Clark acknowledged them, but continued to pose questions and interject personal comments about their relationship in an effort to get Collings to speak. Collings told Chief Clark he did not agree with the murder charges lodged against him and said, "This is well out of your hands at this point." Chief Clark responded, "Let me tell you something, son. It's not out of my hands as much as you think. I told you I would stand by you and would—would be there for you all the way, all the way through to the extent that I could, and I have done that, and I will continue to do

15

that. But I can only do that to the extent that you allow it." Nevertheless, Collings refrained from answering any of Chief Clark's questions.

At the suppression hearing, Collings attempted to admit the November 14th videotape into evidence, arguing the videotape would permit the circuit court to see the nature of his and Chief Clark's interactions while they were alone, how Chief Clark pressured Collings, and how his constitutional rights were disregarded. Collings argued this videotape went straight to the issue of Chief Clark's credibility regarding his testimony at the suppression hearing that he did not believe he pressured or coerced Collings into confessing to Rowan's murder on the Muncie Bridge and was admissible as part of the totality of the circumstances.

The State objected to the admission of the videotape. It recognized the videotape would be inadmissible at trial due to Chief Clark's blatant disregard for Collings' constitutional rights. The State further argued Collings could not "bootstrap" the issue of voluntariness by way of this videotape due to the fact that it occurred five days after Collings was arrested, represented by counsel, and arraigned. The circuit court permitted Collings to play the videotape as part of an offer of proof, but the circuit court ultimately sustained the State's objection.

This Court is troubled deeply by Chief Clark's egregious and blatant violation of Collings' constitutional rights while knowingly being recorded. However, the record refutes Collings' claim that the circuit court failed to consider the videotape for his intended purpose. In overruling Collings' motion to suppress, the circuit court found the November 14th videotape did not operate to invalidate Collings' voluntary statements made through his confessions on November 9th. This ruling demonstrates the circuit court considered the videotape on its merits when ruling on whether Collings' confessions were voluntary. The fact that the circuit court found the videotape unavailing does not mean Collings was barred from presenting the evidence. Further, the fact that Collings was able to invoke his rights and withstand Chief Clark's repeated barrage of inappropriate and illegal questioning undercuts his argument of coercion.

Finally, the record further refutes Collings' claim regarding Chief Clark's credibility. Collings testified at the suppression hearing and used the phrase "badgering and pestering" to characterize his interaction with other law enforcement officials. However, Collings never once indicated Chief Clark threatened, pressured, or coerced him into speaking during any of the times he sought out Chief Clark to talk.

*State v. Collings*, 450 S.W.3d at 757–58.

Here, counsel for Petitioner cannot establish that the state court evidentiary ruling violated

due process as Petitioner cannot establish an evidentiary impropriety that was so egregious that

absent the alleged impropriety the verdict probably would have been different. This Court will not re-examine the state court's interpretation. Further, the Missouri Supreme Court rejected this claim on plain error review. This Court denies Ground Two.

> **Ground Three: Trial counsel was ineffective in failing to properly preserve in a motion for new trial that Petitioner was denied the opportunity to present evidence of law enforcement's coercive tactics.**

Petitioner argues trial counsel failed to follow through on their objection to the trial court's refusal to consider "Chief Clark's egregious and blatant violation of Collings' constitutional rights while being recorded." *Id.* at 758. Petitioner argues trial counsel must include the issue in a timely filed motion for new trial or the matter will only be considered on plain error review and while trial counsel filed a timely motion for new trial, trial counsel failed to include this issue.

Respondent argues that while the claim is barred because petitioner did not properly present it in state court. the claim is also without merit because the Missouri Supreme Court found in an alternate holding, in the direct appeal, that the suppression court committed no error in its evidentiary rulings. *Id.* at 756-59. As a result, Respondent argues Petitioner cannot establish an ineffective assistance claim for declining to preserve a meritless claim that was rejected by the Missouri Supreme Court in an alternate holding. *Citing Strickland v. Washington,* 466 U.S. 668 (1984).

Here, Petitioner "may establish cause for a default of an ineffective assistance claim… where appointed counsel in the initial review, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." *Martinze*, 566 U.S. at 14. Petitioner must demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, that the claim has some merit. *Id.* Petitioner must show: 1) counsel's deficient performance - that his attorney's performance fell below "an objective standard of

17

reasonableness," and (2) prejudice - that confidence in the result of the original proceeding is undermined as a result of counsel's deficiencies. *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice is present whenever "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court has reviewed the record before it and finds Petitioner has failed to establish that there is a likelihood that Petitioner's claim would have resulted in a reversal of the trial court's evidentiary ruling if trial counsel had properly preserved the claim in a motion for new trial. In addition, Petitioner has failed to provide any other basis for relief and Ground Three is denied.

**Ground Four:  State failed to disclose their primary law enforcement witness had a prior criminal disposition that impacted his credibility.**

Petitioner argues that the State did not disclose Chief Clark's history that he was a "deserter" from the United States Army after being conscripted for service during the Vietnam War.  Respondent argues the police chief had been convicted of being "AWOL" in 1968 and 1969. Respondent argues this claim is procedurally barred because Petitioner did not raise it in state court, despite a pretrial disclosure of the police chief's arrest on the offense, with a notation that the disposition was unknown. Respondent further argues Petitioner could have, through due diligence, raised it in the ordinary course of review based on the information the State disclosed. *O'Neal v. Bowersox,* 73 F.3d 169 (8th Cir. 1995) (petitioner could have obtained undisclosed prior convictions of corrections officer, who witnessed the murder, through due diligence and there was no reasonable probability that knowledge of the convictions would have changed the outcome of the proceedings).

Petitioner acknowledges that this claim is procedurally defaulted but argues the procedural default can be excused under *Martinez*.  Petitioner must show actual prejudice sufficient to

overcome a default, that it worked to his actual and substantial disadvantage, not merely that it allegedly created the possibility of prejudice. *United States v. Frady,* 456 U.S. 152, 153 (1982). Here, the periods of time Chief Clark was AWOL occurred in 1968 and 1969, decades before his involvement in Petitioner's case. Petitioner cannot show a reasonable probability the outcome of the proceeding was changed, even if a failure to disclose occurred (which has not been proven). Ground Four is denied.

> **Ground Five: Trial counsel was ineffective for failing to investigate Chief Clark's military record and to reopen the motion to suppress.**

Petitioner argues his trial attorneys, and later his post-conviction counsel, had an affirmative duty to conduct a thorough investigation and their failure to follow up and investigate Chief Clark's criminal background after they were placed on notice of it on or after March 11, 2011 constitutes ineffective assistance of counsel. Petitioner contends this evidence would have served to impeach Chief Clark's credibility and supply additional evidence supporting the Missouri Supreme Court's view of his behavior – quoting the opinion's language that "Chief Clark's egregious and blatant violation of Collings' constitutional rights while being recorded." *Collings,* 450 S.W.3d at 758. Petitioner acknowledges that this claim is procedurally defaulted but that under *Martinez* he can present a claim.

Petitioner "may establish cause for a default of an ineffectiveassistance claim … where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." *Martinez*, 566 U.S. at 14. Petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Respondent argues that the claim cannot be reviewed because it was not raised in the state courts and further that there is no actual prejudice. Respondent also argues the claim is without legal merit because there is no reasonable probability that the outcome of the proceeding was changed because the defense did not try to introduce Chief Clark's military record at the suppression hearing. Petitioner cites to Chief Clark's criminal conviction as admissible to impeach his credibility. Petitioner also states that this information was not disclosed prior to the suppression hearing.

Here, again the Court finds there is no reasonable probability that the outcome of the proceeding was changed because the defense did not try and introduce the decades old military record of the police chief. The Court denies Ground Five.

**Ground Six: Trial counsel was ineffective for failing to conduct a thorough investigation substantiating Spears's involvement in the abduction and murder.**

Petitioner argues his trial attorneys, and later his post-conviction counsel, had an affirmative duty to conduct a thorough investigation and their failure to follow up and investigate Spears involvement in this abduction and murder was ineffective assistance of counsel. Petitioner contends his claims now go beyond the strategic decisions of counsel and extend to counsel's failure to investigate Spears. Petitioner states that trial counsel wanted to keep Spears' involvement from the jury during the first part of the trial, but that this decision was made without the benefit of a full investigation.

The Missouri Supreme Court rejected the claim that trial counsel was ineffective for not investigating Spears and found that the decision not to pursue that line of defense was reasonable trial strategy. Specifically, trial counsel testified that Spears' confession that he and Petitioner acted together suggested more deliberation than Petitioner's own confession and that counsel did

not want the jury to hear Spears' statement. *Collings*, 543 S.W.3d at 15-16. Further, the jury heard other evidence that Spears confessed to the murder.

Here, the Missouri Supreme Court's decision is entitled to deference under § 2254(d) and Petitioner has not established a decision that was contrary to or involved an unreasonable application of clearly established law as determined by the Supreme Court of the United States. Ground Six is denied.

> **Ground Seven:  Trial counsel was ineffective for failing to conduct a thorough investigation of Collings's statements to law enforcement and whether they were substantiated by physical evidence.**

Petitioner argues trial counsel failed to investigate and did not attack his confession based on the lack of physical evidence that resulted in a defense theory without the benefit of a thorough investigation and that "was ultimately contradicted by the physical evidence available to the defense team." Petitioner argues Spears was not implicated as a participant in the murder. Petitioner argues that although the claim is procedurally defaulted the application of *Martinez* should allow him to overcome the procedural deficiencies. Petitioner states he need only "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Petitioner contends this is a low burden that he has met.

Here, Petitioner cannot meet the *Martinez* requirements. The Missouri Supreme Court found that the trial counsel made a reasonable strategic decision and that arguing Petitioner committed the murder only in a sudden panic after the victim recognized him, as opposed to more deliberate actions, was consistent with his confession. Petitioner cannot show a reasonable probability that the outcome would have been different when there is a risk to bringing in evidence of an accomplice or acting jointly in a deliberated murder.

21

Further, Petitioner alleged in another claim that trial counsel was ineffective for not investigating the idea that the victim's stepfather was the real killer and trying to blame the murder on him. The post-conviction review court rejected this claim after an evidentiary hearing, finding that the decision not to pursue this line of defense was reasonable trial strategy. The Missouri Supreme Court agreed. *Collings*, 543 S.W.3d at 15–16 (trial counsel testified at the evidentiary hearing that Spears' confession, that he and Collings acted together in carrying out the murder, suggested more deliberation than Collings' own confession and that he never wanted that jury to hear Spears' statements at all for any reason). Again, here there is no reasonable probability that the outcome of the proceeding would have been different had counsel pursued a defense strategy of attacking Collings' confession as not independently supported by other evidence. Ground Seven is denied.

**Ground Eight: Petitioner's post-conviction counsel suffered a conflict of interest that violated his constitutional rights.**

Petitioner alleges that the public defender's office had a conflict of interest because the office employed the victim's stepfather in a clerical capacity during Petitioner's post-conviction review litigation. Respondent argues that the claim is procedurally barred because it was not raised in the appeal and that even if the claim was cognizable, it is without merit. Petitioner contends that there is both cause and prejudice for any procedural default arising from post-conviction counsel's failure to raise this claim earlier and that the reason the post-conviction counsel failed to do so was because of the conflict of interest.[2]

---

[2] Petitioner requests that if he must first present this claim to state court before this Court will address it then the proceedings should be stayed and held in abeyance so he can complete necessary state court proceedings. The Court has denied this request.

22

The government cites to *Gee v. Groose*, 110 F.3d 1346, 135-52 (8ᵗʰ Cir. 1997) stating that this claim is not cognizable because alleged ineffective assistance of post-conviction counsel, and alleged improprieties in the state post-conviction review does not raise claims that can be made under § 2254. Petitioner argues that *Gee* is inconsistent with Supreme Court law establishing that improprieties in post-conviction proceedings are cognizable to the extent they affect petitioner's constitutional rights.

Here, the Court agrees there is no real adverse impact identified. Petitioner cannot establish a *Strickland* prejudice. Petitioner argues an adverse effect results from a conflict of interest if counsel fails to pursue a "plausible" defense or strategy that "was inherently in conflict with or not undertaken due to the attorney's other loyalties." As set forth herein, Petitioner has failed to show any such failure with regard to a defense or strategy. Ground Eight is denied.

**Ground Nine: Missouri's rules and jury instructions on voluntary intoxication evidence to negate the *mens rea* element of first-degree murder are unconstitutional.**

Petitioner argues that Missouri's bar on using evidence of voluntary intoxication to negate the required mental state for a crime is unconstitutional. Petitioner did not raise this claim on direct appeal and Respondent argues it is procedurally barred. Petitioner argued on appeal of the denial of post-conviction relief that the rule is unconstitutional and that his trial counsel was ineffective for not making the argument. The Missouri Supreme Court found the rule is constitutional and that counsel was not ineffective for declining to argue the issue. *Collings v. State*, 543 S.W.3d at 8–12, citing *Montana v. Egelhoff*, 518 U.S. 37 (1996).

In *Gary v. Dormire*, the Eighth Circuit stated "Missouri treats voluntarily intoxicated individuals and sober individuals equally culpable for criminal activity. It accomplishes this by giving evidence of voluntary intoxication no relevance insofar as the mental elements of the crime are concerned. Because evidence of voluntary intoxication has no exculpatory relevance under

23

Missouri law, a criminal defendant has no corresponding constitutional right to have the jury consider this evidence." *Gary v. Dormire*, 256 F.3d 753, 759 (8th Cir. 2001).

Here, the Missouri Supreme Court's decision is again entitled to deference under 28 U.S.C. § 2254(d). The Court denies Ground Nine.

> **Ground Ten: Trial counsel was ineffective in failing to adequately investigate and present expert evidence to support a constitutional challenge to Missouri's bar against the use of voluntary intoxication evidence to negate the *mens rea* element of first-degree murder.**

Petitioner alleges that trial counsel was ineffective for not presenting expert evidence in support of the claim that Missouri's bar on using evidence of voluntary intoxication to negate the required mental state for a crime is unconstitutional. Again, on appeal of the post-conviction relief denial, Petitioner raised a claim that the rule was unconstitutional and that his trial counsel was ineffective for not presenting this argument and evidence to support it.

The Missouri Supreme Court found the rule is constitutional and counsel was not ineffective for failing to raise this argument. *Collings v. State*, 543 S.W.3d at 8–12. The Missouri Supreme Court found that in *Montana v. Egelhoff*, 518 U.S. 37 (1996) the United States Supreme Court approved a statute finding voluntary intoxication does not negate the mental state for an offense. Here, trial counsel cannot have been ineffective for failing to make a meritless objection. See *Strickland v. Washington*, 466 U.S. 668 (1984); see also *Wright v. Nix*, 928 F.2d 270, 272–73 (8th Cir. 1991) (rejecting claim that counsel could be ineffective by not objecting to actions that were legally correct under the law as it existed at the time of trial).

Petitioner has failed to establish that the Missouri Supreme Court decision is an unreasonable application of United States Supreme Court precedent. The Court finds the decision is entitled to deference under 28 U.S.C. § 2254(d). Ground Ten is denied.

**Ground Eleven: Trial counsel was ineffective in failing to adequately investigate and present a diminished capacity defense.**

Petitioner alleges that trial counsel was ineffective for not investigating and presenting a diminished capacity defense. Specifically, that he was incapable of forming the mental state required for conviction, based on a mental disease or defect. Respondent argues that Petitioner did not raise this claim to the Missouri courts and therefore it is procedurally barred. Petitioner states that although the claim is procedurally defaulted, he has shown cause and prejudice to enable review by this Court. In addition, Respondent contends that the claim is without legal merit.

This claim is similar to a claim that Petitioner did raise on appeal. Petitioner alleged that counsel was ineffective for not presenting an addiction expert and a mental health expert at the penalty phase to present evidence on the impact substance abuse and childhood trauma had on his ability to conform his conduct to the law. The Missouri Supreme Court found that trial counsel conducted a thorough investigation. Counsel hired eight experts relating to Petitioner's mental diseases and development and made a strategic decision to call a single expert during the penalty phase. *State v. Collings*, 543 S.W.3d at 12–13. The Missouri Supreme Court held it was a reasonable strategic decision not to present a diminished capacity defense.

Here, counsel made a reasonable strategic decision to proceed the way that he did, after consulting eight mental health and development experts. Further, Petitioner's claim is procedurally barred and Petitioner has not shown under *Martinez* that the underlying ineffective assistance of trial counsel claim is substantial. Ground Eleven is denied.

**Ground Twelve:  Trial counsel was ineffective in failing to adequately investigate and present testimony of search and rescue dog handler.**

Petitioner alleges trial counsel was ineffective for not calling a cadaver dog handler to testify at the guilt phase of trial.[3]  Petitioner contends the handler would have testified that no cadaver dog alerted on his truck but two alerted on the victim's stepfather's vehicle.  Petitioner raised this claim on appeal and the Missouri Supreme Court found the claim was without legal merit.  *Collings v. State*, 543 S.W. 3d at 17–18.  The Missouri Supreme Court stated that guilt phase counsel testified that he made a strategic decision during the guilt phase of trial to mention Spears name as few times as possible and counsel for the penalty phase wanted the dog handler to cast doubt on Petitioner's sole involvement.  *Id*.  The Court found the strategic decision was reasonable given Petitioner's detailed confession to law enforcement.  Further, the Court held there was no reasonable probability the evidence would have changed the outcome of the guilt phase. The Court reasoned that if the jury had any doubt Petitioner was solely responsible for the murder, after hearing the dog handler's testimony, they would have voted to sentence him to life rather than death.  However, the jury voted to impose the death penalty after hearing the dog handler's testimony.  As a result, there is not a reasonable probability the evidence would have resulted in a different verdict.  *Id.* at 18.

Petitioner argues that the Missouri Supreme Court's decision is not entitled to deference because its rests on unreasonable determinations of fact.  This Court disagrees.  The Missouri Supreme Court's decision is entitled to deference under 28 U.S.C. § 2254(d).  Ground Twelve is denied.

---

[3] The dog handler did testify during the penalty phase that two dogs trained to alert at the scent of human remains separately alerted on Spears's mother's Suburban, but not on Petitioner's truck. *Collings v. State,* 543 S.W.3d at 17.

**Ground Thirteen: Trial counsel was ineffective in failing to request a second-degree felony murder instruction.**

Petitioner alleges that trial counsel was ineffective for requesting a felony second-degree murder instruction, as opposed to a standard second-degree murder instruction, or not requesting a felony second-degree murder instruction in addition to the standard second-degree murder instruction. Petitioner did not present this claim to the Missouri courts. Respondent states it is therefore procedurally barred. Petitioner contends he has shown cause and prejudice to allow this Court to review the claim despite the procedural deficiencies.

The claim is also without merit. Collings' confession admits that he knowingly killed the victim, the mental state for conventional second-degree murder, and the jury found deliberation, the higher mental state required for a first-degree murder conviction. Respondent argues a jury would not have reached a felony murder instruction because it did not even reach the lesser offense of conventional second-degree murder. As a result, Respondent argues there is no ineffectiveness of counsel when there is no reasonable probability that the outcome of the proceeding was changed. Citing *State v. Kinder*, 942 S.W.2d 313, 330 (Mo. 1997) (a jury must acquit of first-degree murder before it can convict of the lesser offense of conventional second-degree murder, and when it convicts of firstdegree murder there than can be no prejudice from not submitting a felony murder instruction in addition to a conventional second-degree murder instruction); *Winfield v. Roper*, 2005 WL6112420 (E.D. Mo. 2005) at *12 (same); *Hall v. Luebbers*, 296 F.3d 685, 699 (8th Cir. 2002) (citing cases for the proposition that when the jury convicts of first-degree murder, and does not reach conventional second-degree murder, there can be no prejudice from not giving additional lesser included instructions beyond conventional seconddegree murder). This Court agrees with the arguments presented by Respondent that counsel cannot have been ineffective under *Strickland* for not requesting a second-degree felony murder instruction here. This claim is denied.

27

**Ground Fourteen: Trial counsel was ineffective in failing to investigate and present at sentencing mitigating evidence of Petitioner's mental health and intoxication.**

Petitioner alleges that his counsel was ineffective for not presenting additional mental health evidence and intoxication evidence at the penalty phase. The Missouri Supreme Court found that trial counsel conducted a thorough investigation. Trial counsel hired eight different expert witnesses from the fields of psychiatry, psychology, neuropsychology, and neuroradiology, and experts on sex offenses and human development.[4] *State v. Collings*, 543 S.W.3d at 13. After consulting with the experts, counsel made a strategic decision to call a single expert during the penalty phase to testify concerning Petitioner's emotional development and history of sexual abuse. *Id.* The Missouri Supreme Court discussed that Petitioner's counsel also made a strategic decision not to focus on evidence of his drug and alcohol use as they believe such evidence and argument would antagonize the jury. *Id.* The Court stated: "[t]rial counsel's selection of which expert witnesses to call at trial is generally a question of trial strategy and is virtually unchallengeable." *Id.* (internal citation omitted).

This Court finds the Missouri Supreme Court's decision is a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) and is entitled to deference under 28 U.S.C. § 2254(d). Ground Fourteen is denied.

---

[4] "A neuropsychologist gave Collings's trial counsel recommendations about the direction they should pursue. His trial counsel asked for a consultation with another psychologist, who had experience with fetal alcohol syndrome. Defense counsel also hired a forensic psychiatrist and an expert on sex offenses. Consultation with the sex offenses expert led trial counsel to hire a neuroradiologist to conduct scans of Collings's brain to look for evidence of possible brain damage caused by his drug and alcohol use. The scans, however, did not reveal any brain damage. Trial counsel also consulted a specialist on gigantism as both Collings and his father had acromegaly, a disorder that develops from the pituitary gland producing excess growth hormone. The defense also hired a mental health expert to assess Collings while he was incarcerated after a change in his behavior made them concerned for his well-being." *Collings v. State*, 543 S.W.3d at 13.

**Ground Fifteen: Trial counsel failed to investigate, develop, and present compelling penalty phase evidence.**

Petitioner alleges that that trial defense counsel ineffectively failed to investigate and present mitigating evidence. Petitioner argues the only way counsel could move the jury to understand how he could take the actions he took, or to show mercy on him for those actions, was to explain the "unrelenting horrors he endured" during his life. Petitioner argues counsel failed to do so. Petitioner argues the evidence that was presented allowed the prosecution to "capitalize" on the alleged deficient performance turning mitigation evidence into aggravation.

Respondent again argues the Missouri Supreme Court found that trial counsel conducted a thorough investigation before making a strategic decision to call only a single expert during the penalty phase. *State v. Collings*, 543 S.W.3d at 12–13. As a result, to the extent this claim overlaps with the claim presented to the Missouri Supreme Court, the Court gives deference to the reasonable decision of the Missouri Supreme Court.

However, to the extent this claim goes beyond the claim raised to the state court it is procedurally barred. Here, Petitioner argues his present claim is that trial counsel was ineffective for failing to conduct a constitutionally requisite investigation and that the defaulted claim is reviewed under *Martinez.* Here, the record reflects trial counsel made a reasonable investigation, and then made a strategic decision regarding what evidence to present. Further, Petitioner cannot establish any prejudice that resulted. The Court agrees with Respondent that Petitioner is attempting to use hindsight to attack strategic decisions which are not an appropriate basis for a habeas claim. See *Strickland*, 466 U.S. at 689-92 (criticizing use of hindsight to attack strategic decisions by trial counsel and noting the requirement for prejudice).

Further, because of default, Petitioner would have to show enhanced prejudice under *Charron*, which is greater than the normal *Strickland* prejudice. *Charron v. Gammon*, 69 F.3d at

29

858 ("the procedural bar prejudice is higher than that required to establish ineffective assistance of counsel under *Strickland*). Petitioner has failed to meet this burden and Ground Fifteen is denied.

**Ground Sixteen: Trial counsel was ineffective in failing to call lay mitigation witnesses Julie Pickett and Bobby Thomas.**

Petitioner argues trial counsel was ineffective for not calling his stepmother and stepbrother during the penalty phase. The Missouri Supreme Court found that counsel had originally planned to call Julie Pickett, the stepmother, but made a reasonable decision not to call her after concluding it would be duplicative testimony of several other family members and Dr. Draper. Further, trial counsel made the decision after the stepmother and other Collings' family members engaged in a verbal exchange with members of the jury in a hallway. *Collings v. State,* 543 S.W.3d at 20. The Missouri Supreme Court found counsel's decision was a reasonable strategy. This Court finds the state court's decision is again entitled to deference as it was a reasonable application of *Strickland*.

Bobby Thomas, the stepbrother's, alleged testimony was that Petitioner found the stepbrother who had tried to hang himself and elevated his body until someone came to cut the rope. The Missouri Supreme Court found that Dr. Draper's testimony discussed Petitioner saving a man from hanging, without identifying the man, and that there was no reasonable probability that additional testimony regarding that specific incident would have changed the outcome of the penalty phase. *Collings v. State*, 543 S.W.3d at 20-21.[5]

The Missouri Supreme Court's decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d) and this claim is denied.

---

[5] The Missouri Supreme Court also noted counsel testified he was unaware of the identity of who was involved in this incident and that Petitioner did not tell counsel it was his stepbrother.

**Ground Seventeen:  Trial counsel was ineffective in failing to investigate and present at sentencing mitigating evidence of Petitioner's mental impairments.**

Petitioner argues that counsel failed to present mental health evidence at the penalty phase. Respondent argues that this claim is similar to Petitioner's claim that counsel was ineffective for not presenting an addiction expert and mental health expert regarding Petitioner's substance abuse and childhood trauma.  The Missouri Supreme Court held that trial counsel hired a total of eight experts, conducted a thorough investigation and made a strategic decision to only call one expert. This decision is entitled to deference under 28 U.S.C. § 2254(d).

Respondent further contends that to the extent that this claim goes beyond Petitioner's prior challenge the claim it is procedurally barred. Respondent further contends that any new claim is also without merit because defense counsel conducted a reasonable investigation and then made a strategic decision  about what to present, or not present, and Petitioner cannot establish prejudice as a result of counsel's decision.

Petitioner states that although this claim is  procedurally defaulted, he has shown cause and prejudice enabling this Court's review of the claim. This Court finds Petitioner has failed to show a basis for review and Ground Seventeen is denied.

**Ground Eighteen:  Trial counsel was ineffective in failing to admit into evidence social, medical, and educational history records.**

Petitioner argues trial counsel was ineffective for failing to admit records of Collings social, medical, and educational history.  Petitioner made this argument to the Missouri Supreme Court, which found the argument to be without merit, that direct appeal counsel was ineffective for not challenging the trial court's exclusion of the records. *Collings v. State*, 543 S.W.3d at 14–15.  The Missouri Supreme Court found that the argument on appeal was different than the argument at trial and was not properly preserved.  The Court further stated that under plain error review the Court had discretion to review unpreserved claims.  *Id.* at 14.  The Missouri Supreme

31

further found that the records were excluded based on hearsay and relevance objections, but that Dr. Draper was allowed to testify to information in the records. *Id.* at 14. The Missouri Supreme Court found that direct appeal counsel considered challenging the exclusion of the records but decided not to in light of page limitations, and the brief already containing ten claims, although in hindsight she would make a different decision. *Id.* at 15. The Missouri Supreme Court found that in the post-conviction appeal Collings argued that the records were independently admissible as business records and court records, but that counsel had argued at trial that the records should be admitted as support for Dr. Draper's testimony. *Id.*

The Missouri Supreme Court found that it not would have been an abuse of discretion under either theory for the trial court to exclude the records as duplicative. *Id.* The Missouri Supreme Court found the records would have offered duplicative, corroborating evidence for the mitigation expert testimony offered. *Id.* The Court found it was not an abuse of discretion to limit cumulative evidence. *Id.* 14-15 ("Because the jury was presented with the relevant information through Dr. Draper's testimony, it was not evident, obvious, and clear error for the trial court to have excluded the related documents that would have provided duplicative evidence.").

Here, Petitioner argues trial counsel, as opposed to direct appeal counsel, was ineffective. This claim is procedurally barred. However, regardless of the whether the claim is barred it is also without merit. The Court finds Petitioner has failed to establish a basis for this claim and it is denied.

**Ground Nineteen: Appellate counsel was ineffective in failing to challenge the aggravating circumstance instruction on whether the murder involved torture and as a result was outrageously and wantonly vile, horrible, and inhuman.**

Petitioner alleges that direct appeal counsel was ineffective for not challenging the constitutionality of the aggravating circumstance instruction concerning whether the murder involved torture, and whether as a result thereof the murder was outrageously and wantonly vile,

horrible, and inhuman. Respondent argues Petitioner raised the claim in the Missouri Supreme Court, and the Missouri Supreme Court found that the claim is without merit. *Collings v. State*, 543 S.W.3d at 21–22.

The Missouri Supreme Court found that counsel testified she considered raising the claim in a separate point in her opening brief but decided to instead include the argument in the reply brief in support of the point attacking the proportionality of punishment. *Id*. The Missouri Supreme Court found that counsel made a reasonable strategic decision. *Id.* at 22. The Court noted that counsel had the ability to strategically winnow out weaker arguments, that no case law supported the argument that an impropriety occurred, and in fact the case law supported the opposite proposition. The Missouri Supreme Court found that no case law supported the argument that the instruction was unconstitutional, and counsel had no duty to make such a novel claim on appeal. *Id.*, see also *Deck v. Jennings*, 978 F.3d 578, 582–83 (8th Cir. 2020) (postconviction counsel raised a number of other claims, including that trial counsel should have presented more mitigating evidence at the third trial. Although none of these claims proved successful, there was a well-established legal basis for them, and counsel could have reasonably concluded that an ineffective-assistance claim focused exclusively on the delay would have only detracted from other, stronger arguments. In sum, postconviction counsel's performance was reasonable and the Martinez exception—the only conceivable basis for excusing Deck's procedural default—is unavailable to him.).

This Court finds the Missouri Supreme Court's decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d) and Petitioner has failed to provide a basis for habeas releif. Ground Nineteen is denied.

**Ground Twenty: Missouri jury instructions on imposing the death penalty improperly lessened the State's burden of proof for the imposition of a death sentence.**

33

Petitioner alleges that the Missouri instructions on imposing the death penalty are unconstitutional. The Missouri Supreme Court rejected Petitioner's claims based on earlier precedent rejecting the same claims in earlier cases. The Missouri Supreme Court found that the instructions were proper under *Kansas v. Marsh*, 548 U.S. 163, 170–71 (2006). *Collings*, 450 S.W.3d at 766. Petitioner also argued that because he was sentenced to death the information should have charged him with "aggravated" first-degree murder, as opposed to first-degree murder, the crime that exists under Missouri law, and that the information should have listed all aggravating circumstances, at the time of charging. The Missouri Supreme Court rejected this claim citing four decisions that had already rejected the same claim. *Id.*

Here, this Court finds the Missouri Supreme Court decisions are reasonable and entitled to deference under 28 U.S.C. § 2254(d). Ground Twenty is denied.

**Ground Twenty One: The State prosecutor's closing argument in which the prosecutor acted out the strangling of the victim violated Petitioner's constitutional rights.**

Petitioner argues that the trial court erred by overruling objections to the State's guilt-phase closing argument and further erred in not declaring a mistrial. The Missouri Supreme Court found the challenged closing argument was not improper and instead constituted proper rebuttal to the defense's argument that Collings did not deliberate. *Collings*, 450 S.W.3d at 763–64. The Missouri Supreme Court noted that when counsel was demonstrating the strangulation he was rebutting the argument that "Collings did not reflect coolly upon Rowan's murder." The trial court stated "we probably need to stop" but that the prosecutor was demonstrating what was shown in the evidence.[6]

---

[6] The Missouri Supreme Court found that *Rhodes* was distinguishable because the prosecutor did not make any statements about the jurors placing themselves in Rowan's shoes or to imagine what she went through when she was raped and murdered. Instead, the Missouri Supreme Court found

34

Respondent argues what Petitioner is "really alleging" here is a claim of "personalization" under Missouri law, and not a constitutional claim. Respondent argues however to the extent Petitioner presents a due process claim the Missouri Supreme Court acted reasonably in rejecting it. Citing *Darden v. Wainright*, 477 U.S. 168, 181–82 (1986) (discussing difficult standard that must be met to show a due process violation by argument and noting that if the argument did not misstate the evidence, did not disparage a particular right of the defendant, or was responsive to defense argument, those factors cut against finding a due process violation). Here, the Court denies Ground Twenty One.

**Ground Twenty Two: The trial court erred in overruling Petitioner's objection and request for a mistrial based on Collings' father's penalty phase testimony.**

Petitioner presented this claim in his appeal and the Missouri Supreme Court found it to be without merit. *Collings*, 450 S.W.3d at 765-66. Petitioner argues that the Missouri Supreme Court's determination rests on an unreasonable determination of the facts and is contrary to or an unreasonable application of clearly establish Supreme Court law.

Petitioner's father testified during the penalty phase and on direct examination that he knew a man can change. However, on cross-examination Petitioner's father was asked whether he had wanted the death penalty for the man who had murdered his own brother. Petitioner's father testified, "I wanted to be the one to kill him." *Id.* The trial court held a bench conference and defense counsel argued the prosecutor's question was improper. Defense counsel requested a mistrial. The trial court overruled the objection and the request for mistrial.

---

that the prosecutor held his hands in the same fashion several witnesses described as what Collings depicted during the murder. Further, the Court stated that the prosecutor was entitled to rebut Collings' argument that he did not reflect coolly upon Rowan's murder with a demonstration of how long it took to strangle Rowan. *State v. Collings*, 450 S.W.3d at 763-64.

The Missouri Supreme Court's opinion states that the "[a]dmission of a victim's family members' characterizations and opinions about the appropriate sentence are inadmissible. This bar applies equally to family members of the defendant." *Id.* at 765, citing *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997) and *State v. Roll*, 942 S.W.2d 370, 378 (Mo. banc 1997). However, the Missouri Supreme Court found that the "isolated question posed by the prosecutor" did not seek an opinion from the father on what would be an appropriate sentence for Petitioner, that the statement was "isolated, that it was not emphasized or repeated, and that it was not mentioned during either party's closing argument." *Id.* The Missouri Supreme Court found that even if this comment was erroneously admitted, which it did not find, Petitioner failed to demonstrate there was a reasonable probability the outcome of the penalty phase was changed by the testimony. *Id.*

This Court finds the decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Here, again, Petitioner has not shown an unreasonable determination of the facts or that the ruling is contrary to or an unreasonable application of Supreme Court law. Ground Twenty Two is denied.

**Ground Twenty Three: The state's improper statement directing the jurors not to consider mitigating evidence.**

Petitioner alleges during the penalty phase of trial the prosecutor improperly informed the jurors they could not consider evidence that Spears, the victim's stepfather, was the killer. This argument was raised during Petitioner's appeal. Petitioner argued the trial court plainly erred in failing, *sua sponte*, to bar the prosecutor from his statements regarding Petitioner's evidence of Spears' possible involvement in the murder.

During the penalty phase, the prosecutor stated:

Now, when it comes to ... Spears, folks, he's not on trial here today. He never has been during any part of this trial.... It's just something to distract you with. Distract and confuse. Distract and confuse. Try to get some some little thing burrowed down

36

deep, something to distract and confuse you. Don't let it happen.... Spears is not on trial and has nothing to do with this [Collings'] punishment.

*Id.* at 764. The Missouri Supreme Court found that "the prosecutor's comments did not instruct the jury it could not consider the evidence of Spears' potential involvement in Rowan's murder but rather, attacked the relevance and credibility of the defense's theory, which is permissible." *Id.* ("Comments directed at the tactics of defense counsel are permissible.") (internal citation omitted). The Missouri Supreme Court held that the trial court "did not plainly err in failing, *sua sponte*, to intercede to prevent the prosecutor's argument regarding Collings' evidence concerning Spears' potential involvement in Rowan's murder. These comments did not disparage defense counsel, and they did not prevent the jury from considering mitigating circumstance evidence in Collings' favor." *Id.* at 764–65.

Here, the Supreme Court found no plain error so Petitioner's claim is procedurally barred. Further, Petitioner also fails to meet the standard pursuant to § 2254(d). *See James v. Bowersox*, 187 F.3d 866, 869 (8thCir. 1999) ("habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable judge would have *sua sponte* granted a mistrial.") Ground Twenty Three is denied.

**Ground Twenty Four: Trial counsel was ineffective in failing to object to the State's improper statement directing jurors not to consider proper mitigating evidence.**

Petitioner alleges trial counsel was ineffective for not objecting to penalty phase closing argument that Petitioner characterizes as directing the jury it could not consider proper mitigating evidence. Petitioner's claim is procedurally barred because he did not raise his current factual and legal theory of the claim in state court.

The Missouri Supreme Court rejected a claim attacking the trial court for permitting the same argument. *Collings,* 450 S.W.3d at 764–65. The Missouri Supreme Court found the prosecutor did not instruct the jurors they could not consider evidence but instead attacked the

37

relevance and credibility of the defense theory. *Id.* Counsel cannot have been ineffective for declining to make a meritless objection. See *Strickland v. Washington*, 466 U.S. 668 (1984). Ground Twenty Four is denied.

**Ground Twenty Five: Trial counsel was ineffective in failing to object to the prosecution's improper closing argument regarding the role of mercy in the sentencing determination and appeal to a community desire for vengeance.**

Petitioner alleges defense counsel was ineffective for not objecting when the prosecutor allegedly improperly asked the jury not to consider mercy, and allegedly asked the jury to carry out the community's desire for vengeance. Respondent argues this claim is procedurally barred because Petitioner did not raise it in state court.

Respondent also argues the claim is also without legal merit. Respondent contends a review of the transcript reflects the prosecutor did not argue that the jurors could not consider mercy or that they should take vengeance on Petitioner. Instead, the prosecutor made a proper argument that the jury should do justice, as opposed to granting unwarranted mercy. Respondent states there was no proper objection for counsel to make and as a result counsel could not have been ineffective. See *Strickland v. Washington*, 466 U.S. 668 (1984).

Petitioner argues to the extent that the Missouri Supreme Court did consider this claim on the merits, the state court's decision is not entitled to any deference because the decision rests on an unreasonable determination of fact and is contrary to or an unreasonable application of clearly existing Supreme Court law. This Court disagrees. Further, Petitioner contends to the extent that this claim is procedurally defaulted he has shown cause and prejudice enabling this Court's review of the claim. The Court finds that this claim is not substantial and that Petitioner does not meet the *Martinez* standard. Ground Twenty Five is denied.

**Ground Twenty Six: Trial counsel was ineffective in failing to adequately investigate and present Joni Blake's testimony at guilt or sentencing.**

Petitioner argues that defense counsel should have called a neighbor, Ms. Blake, at the guilt or penalty phase to attack details surrounding Petitioner's confession. On appeal to the Missouri Supreme Court Petitioner argued that counsel should have called Ms. Blake at the guilt phase to attack the confession as it concerned events before the murder. Petitioner argues on appeal that Ms. Blake saw Spears and Petitioner at the convenience store where they went to buy beer earlier on the night of the murder, but that her description of the car that they drove differed in details from the way Mahurin described it. The Missouri Supreme Court found that the claim was without merit. *Collings*, 543 S.W.3d at 19–20. The Missouri Supreme Court found that there was no dispute that Spears, Collings, and Mahurin were out buying alcohol at that time, and that any potential discrepancies in the exact description of the vehicle they used would not have created a reasonable probability that the outcome of the proceeding would have been changed. *Id*. This decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d).

To the extent Petitioner expands his claim beyond the guilt phase claim that he presented to the Missouri Supreme Court, the claim is procedurally barred and also without legal merit. Petitioner has failed to show cause and prejudice for further review. This claim is denied.

**Ground Twenty Seven: Trial counsel was ineffective in failing to adequately investigate and present Lisa Blevin's testimony at guilt or sentencing.**

Petitioner alleges that counsel should have called a neighbor, Ms. Blevins, at the guilt or penalty phase to attack details surrounding Petitioner's confession. The Missouri Supreme Court held that the claim is without merit. *Collings*, 543 S.W.3d at 18–19. Petitioner alleged in state court that counsel should have called Blevins at the guilt phase. *Id*. The Missouri Supreme Court noted counsel testified that he was aware of the content of Blevins' interview with the FBI and did not view it as beneficial. *Id.*

39

Ms. Blevin's testimony about the night of the murder at the evidentiary hearing was that she left home about 3 p.m. and returned about 11:30 p.m.; and between 1:30 a.m. and 2:00 a.m. on November 3, she heard a car rev its engine loudly from the direction of Spears' house. *Id.* The Missouri Supreme Court found that this testimony did not provide a viable defense. *Id.* The Court also found that in her earlier statement to the FBI Blevins stated she could hear vehicles but could not identify their location. *Id.* The Missouri Supreme Court found the claim that counsel was ineffective for not calling Ms. Blevins to be without merit. *Id.*

The Missouri Supreme Court's decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Further, to the extent Petitioner expands his claim beyond the guilt phase to the sentencing phase the claim is procedurally defaulted and Petitioner has failed to show cause and prejudice for further review. Ground Twenty Seven is denied.

**Ground Twenty Eight: The trial court erred in admitting physical evidence.**

Petitioner alleges the trial court erred in admitting strands of fiberglass from Collings' property, a pile of ashes from a burn barrel, a partial DNA profile, and hair comparison evidence. The Missouri Supreme Court found all this evidence was relevant and admissible. *Collings*, 450 S.W.3d at 756–59.

Respondent argues if Petitioner is alleging the admission of the evidence violates due process that any such claim is without merit. For a state court evidentiary ruling to violate due process there must have been an evidentiary impropriety, and the impropriety must have been so egregious that "absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). A federal habeas court will not take issue with a state court's interpretation and application of its evidentiary rules. *Id*. at 974, citing *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). Whether there was an evidentiary impropriety

under Missouri law is a question on which the Missouri Supreme Court is the highest authority and the Missouri Supreme Court found no evidentiary impropriety. This decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d). Ground Twenty Eight is denied.

### Certificate of Appealability

A movant can appeal a decision to the Eighth Circuit only if a court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued only if a movant can make a substantial showing of a denial of a constitutional right. *Id.* § 2253(c)(2). To meet this standard, a movant must show reasonable jurists could debate whether the issues should have been resolved in a different manner or the issues deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). For the reasons stated throughout this Order, Petitioner fails to make the requisite showing for issuance of a certificate of appealability.

### Conclusion

Petitioner fails to demonstrate that the Missouri Supreme Court made an unreasonable determination of fact or made a decision involving an unreasonable application of federal constitutional law. Further, he cannot overcome the procedural default of many of his claims and fails to demonstrate cause to establish they are entitled to the *Martinez* equitable exception as set forth herein. Petitioner also fails to show that an evidentiary hearing would assist the Court in the resolution of his claims. Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is denied without a certificate of appealability.

**IT IS SO ORDERED.**

Date: September 30, 2022

*/s/ Douglas Harpool*
Douglas Harpool
UNITED STATES DISTRICT COURT

41